IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SHARON STAFFORD, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:23-CV-272-N |
| | § | |
| NEW DAIRY TEXAS, LLC, | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

This Order addresses Defendant New Dairy Texas, LLC's ("New Dairy") motion for summary judgment [42]. For the following reasons, the Court grants the motion.

### I. ORIGINS OF THE MOTION

This case arises out of an employment discrimination claim under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq. and 42 U.S.C. §1981a), the Age Discrimination in Employment Act of 1967 (29 U.S.C. § 621), and the Lilly Ledbetter Fair Pay Act of 2009 (Pub.L. No. 111–2 § 3(A)). Pl.'s Pet. ¶¶ 30–32, Ex. B 7–8 [2]. Included in her discrimination claims, Stafford also alleges claims for failure to promote based on age and race and creation of hostile environment resulting in a constructive discharge. *Id.* at ¶¶ 21–22, 33.

Sharon Stafford is a fifty-four-year-old Black female. *Id.* at ¶ 4. She began working for Borden Diary in 2019 as a Human Resources Generalist. *Id.* In July 2020, New Dairy acquired Old Borden and Stafford was promoted to Human Resources Business Partner ("HRBP"). Def.'s App., Ex A, Stafford Depo. 33 [44]. In this new position Stafford

MEMORANDUM OPINION AND ORDER – PAGE 1

directly reported to the General Manager of the Dallas Plant, Ray Gibson, and to the Regional Human Resources Director, Julie Khan. Def.'s App., Ex. E, Gibson Decl. 77; Ex. H, Khan Decl. 85. In this new role, Stafford failed to do minimal tasks expected of an HRBP, including tasks like actively reaching out to employment organizations in Dallas to create a talent stream for open positions and walking the floor regularly to be more visible to employees. Def.'s App., Ex. E, Gibson Decl. 71–72; Ex. H, Khan Decl. 86. In response to Stafford's underperformance, Gibson required her to attend daily meetings to better understand the various human resource issues Stafford faced at the Dallas plant. Def.'s App., Ex. E, Gibson Decl. 71–72. After Stafford complained of the frequency of these meetings, Gibson decreased the frequency of their meetings to twice a week. *Id.* On two specific occasions, both Khan and Gibson verbally coached Stafford in response to her failure to do the tasks required of an HRBP. Def.'s App., Ex. F, Stafford Corrective Action Notice 74–75.

On December 15, 2021, Stafford requested a pay raise based on her awareness that her colleagues in the region made significantly more money than her as well as her years of experience. Def.'s App., Ex. G, Stafford Emails 79–80. However, the colleagues who earned more than her had distinguishable work experience and backgrounds, including previous experience as HRBPs or HR Mangers or Directors and did not have the same underperformance concerns as Stafford. *See generally* Def's App., Ex. H, Khan Decl. Stafford recalls Gibson telling her: "I want you to stop all the buffoonery," sometime after her pay disparity complaint. Def.'s App., Ex. A, Stafford Depo. 50–51.

MEMORANDUM OPINION AND ORDER – PAGE 2

On January 18, 2022, Gibson and Khan gave Stafford a disciplinary write up, citing Stafford's increasingly aggressive behavior in how she communicates with others, Stafford's absence or lateness to meetings, general disrespectful behavior in meetings, and failure "to review information for a Personal Improvement Plan for an employee that she received in December 2021 regarding a physical altercation between two employees" as reasons for the write up. Def.'s App., Ex. F, Stafford Corrective Action Notice 74–76.

Though the timeline is not well established, sometime during Stafford's tenure, after she received notice of her underperformance, an HR supervisory position was made available and conferred onto Krista Larson, a younger, white female. *See* Pl.'s Pet. ¶¶ 21–22, Ex. B; Def's App., Ex. H, Khan Decl. 87. Stafford does not dispute that she did not apply for the promotion and admitted she had a four-month exit plan in place by the time she left New Dairy. Def.'s App., Ex. A, Stafford Depo. 17. Even if Stafford had applied for the role, Khan testified "that Stafford had recently received disciplinary action prior to the appointment of Larson as interim Regional Human Resources Director which would have negatively affected her chances to move into the interim role." Def.'s App., Ex. H, Khan Dec. 87. On April 5, 2022, Stafford announced her immediate resignation from New Dairy to pursue a new job offer with better pay as a Human Resources Manager at Apex Supply Company. Def.'s App., Ex. N., Offer Letter 106. In November 2022, Stafford filed the instant suit in state court, which New Dairy timely removed. *See generally* Def's Notice of Removal [1]. New Dairy now brings the instant motion for summary judgment, seeking dismissal of all of Stafford's claims.

MEMORANDUM OPINION AND ORDER – PAGE 3

## II. Summary Judgment Standard

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis omitted). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to judgment by either (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence

MEMORANDUM OPINION AND ORDER – PAGE 4

of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. BURDEN SHIFTING ANALYSIS FOR DISCRIMINATION CLAIMS WHEN THERE IS NO DIRECT EVIDENCE OF DISCRIMINATION

Stafford brings race, sex, and age discrimination claims against New Dairy. In cases where there is no direct evidence of discrimination,[1] such as this one, the Court uses the Fifth Circuit's modified *McDonnell Douglas* framework which shifts the burden on the Plaintiff to make a *prima facie* case of discrimination:

> [T]he plaintiff must first demonstrate a prima facie case of discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact that either (1) the employer's reason is a pretext or (2) that the employer's reason, while true, is only one of the reasons for

---

[1] Though Stafford does not refute that she must establish a *prima facie* case for each of her claims, Stafford does argue "that Defendant uses terms like 'aggressive' and 'disrespectful' when referring to Plaintiff [which] exhibits a mindset of bias, that as a black woman she is required to be 'respectful' and demure." The only evidence provided of Stafford being described as aggressive or disrespectful were emails between Gibson and Khan discussing Stafford's conduct at the January 13, 2022, meeting and in her write up. *See* Def's App., Ex K, Stafford Emails 95–96; Ex. F, Corrective Action Notice [43]. But in Stafford's rebuttal to her written warning, she stated she was not contesting that she became rude and unprofessional during her January 13, 2022, meeting with Gibson and Khan. *See* Def.'s App., Ex. L, Stafford Rebuttal 97. Stafford also argues that Gibson told her that "I want you to stop all the buffoonery" and that "[b]uffoonery is a term generally used to imply 'coonish' or minstrelsy behavior on the part of Black people." Pl.'s Resp. 5, 7 [47]. Buffoonery is often as a word to describe what a person perceives as foolish behavior, without a racial connotation. *See* Merriam-Webster, https://www.merriam-webster.com/dictionary/buffoonery. Furthermore, Stafford does not provide evidence that Gibson made a statement like this more than once or any other alleged racial epithets used by Gibson to support the Courts acceptance of her interpretation of "buffoonery." *See* Def.'s App, Ex. A, Stafford Depo. 219–20.

MEMORANDUM OPINION AND ORDER – PAGE 5

its conduct, and another motivating factor is the plaintiff's protected characteristic.

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411–12 (5th Cir.2007) (citation omitted) (Title VII claims); *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir.2010) (ADEA claims). Because there is no direct evidence of discrimination against Stafford, she must make a showing to establish the *prima facie* case of discrimination for each of her claims to survive summary judgment.

### IV. STAFFORD FAILS TO ESTABLISH A *PRIMA FACIE* CASE FOR HER FAILURE TO PROMOTE CLAIM

Stafford claims that she was not promoted to an HR supervisory position when it became available, even though Stafford was the most qualified for the position. Pl.'s Pet. ¶ 21, Ex. B. Instead, Stafford claims "[t]he position was conferred on a younger white female," Krista Larson. *Id*. To establish a *prima facie* case for discrimination in the form of a failure-to-be-promoted claim, Stafford must show "(1) that she is a member of the protected class; (2) that she sought and was qualified for the position; (3) that she was rejected for the position; and (4) that the employer continued to seek or promote applicants with the plaintiff's qualifications." *Lindsley v. TRT Holdings, Inc.*, 984 F.3d. 460, 469 (5th Cir. 2021) (internal brackets omitted) (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 317 (5th Cir. 2004)).

Stafford does not dispute that she did not seek the promotion at issue. However, "failure to apply for the position does not bar her claim if she can show that such an application would have been a futile gesture." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 406 (5th Cir. 1999) (citing *Teamsters v. United States*, 431 U.S. 324, 363–66

MEMORANDUM OPINION AND ORDER – PAGE 6

(1977); *Claiborne v. Illinois Cent. R.R.*, 583 F.2d 143, 150 (5th Cir.1978)).  However, "[m]aking such a claim usually requires a showing that the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination."  *Id.*

Stafford puts forward no evidence of a known or consistently enforced policy of discrimination.  Furthermore, she fails to offer sufficient evidence to create a genuine issue of material fact regarding whether New Dairy's proffered legitimate, nondiscriminatory basis for selecting HRBP Krista Larson was pretextual.  Larson had over twenty years of management experience in the human resources field in comparison to Stafford who only became an HRBP in the year prior.  Def.'s App., Ex. H., Khan Decl. 87.  Finally, Stafford admitted that she had begun her exit strategy four months prior to her leaving.  Def.'s App., Ex. A, Stafford Depo. 17.  Stafford's admission that she already had to a plan to leave New Dairy directly undermines the notion that she did not seek the promotion because an attempt would be futile in the face of the company's discriminatory policies.  As a result, Stafford cannot make out a *prima facie* case for failure to promote and New Dairy is entitled to summary judgment as a matter of law with respect to Stafford's failure to promote claim.  Accordingly, the Court dismisses Stafford's failure to promote claim.

### V. STAFFORD FAILS TO ESTABLISH A *PRIMA FACIE* CASE FOR HER PAY DISPARITY CLAIM

Stafford claims New Dairy violated the Lilly Ledbetter Fair Pay Act of 2009 by "paying younger female and male employees more to perform the same or substantially the same job duties as Plaintiff."  Pl.'s Pet. ¶ 32, Ex. B.  Stafford concedes she cannot make out a separate cause of action under the Lilly Ledbetter Fair Pay Act.  *See* Pl.'s Resp. 9

(citing *Obondi v. UT Sw. Med. Ctr.*, 2017 WL 2729965, at *2 (N.D. Tex. 2017)). Instead, she argues her claim for pay disparity is synonymous with her Lilly Ledbetter Fair Pay Act Claim, and "the pay disparity claim is evident in the facts of the case and Defendant is not prejudiced by its inclusion though misnomered." *Id.* Stafford does not plead a pay disparity claim as part of her age, sex, and race discrimination claims in her Original Petition. Accordingly, the Court dismisses her pay disparity claims on this basis alone.

Even if the Court were to construe Stafford's claim under the Lilly Ledbetter Fair Pay Act as synonymous to a pay disparity claim under Title VII, Stafford would still have to establish a *prima facie* case for discrimination. To establish a *prima facie* case of race and sex discrimination under Title VII, Stafford must show that she: "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). To make out a case of pay disparity, Stafford must show that "she was paid less than a proffered comparator, not in her protected class, for work requiring substantially the same responsibility." *Hester v. Bd. of Sup. of LSU*, 887 F.3d 177, 184 (5th Cir. 2018). "[T]he proffered comparator 'must be similarly situated'" to the plaintiff and "[a] variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications." *Id.* at 184–85 (quoting *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–61 (5th Cir. 2009)).

MEMORANDUM OPINION AND ORDER – PAGE 8

Stafford relies on the salaries of other HRBP's at other plants — Doni Schiltz, Chase Bourgeois, Michelle Simpson, and Krista Larson — as comparators. Pl.'s Resp. 13–15. New Dairy provides undisputed summary judgment evidence that Bourgeois, Simpson, Larson, and Schlitz are not similarly situated as to act as adequate comparators for a pay discrimination claim. Stafford does not dispute that each HRBP was "required to perform location specific tasks including, but not limited to, some tasks that Stafford did not perform in the Dallas Plant." Def.'s App., Ex. H, Khan Dec. 87–88. Stafford does not dispute that "[t]he amount of qualified HRBPs in Lafayette, Louisiana generally is limited and the demand is high as a number of oil and gas operations in the area require them," which distinguishes Bourgeois and Simpson from Stafford. *Id.* at 85–86. Stafford likewise does not make a showing that the same hiring challenges existed for the Dallas Plant. Stafford does not dispute that Bourgeois, Simpson, Larson, and Schiltz all had previous experience as an HRBPs or as an HR Directors or Managers prior to working at New Dairy. *Id.* at 85; Ex. P, LinkedIn Profile of Doni Schiltz 115–22. In contrast, Stafford had no experience as an HRBP or HR Director or Manager prior to assuming the role at the Dallas Plant. Def.'s App., Ex. A, Stafford Depo. 18–19.

To rebut New Dairy's proffered nondiscriminatory basis for salary determinations, Stafford must show "that a discriminatory motive is more likely than a nondiscriminatory one, 'or that [her employer's] explanation is unworthy of credence.'" *Mengitsu v. Mississippi Valley State Univ.*, 716 F. App'x 331, 334 (5th Cir. 2018) (unpub.) (brackets in original) (citation omitted). In this effort, Stafford cites her 30 years of general HR experience to rebut New Dairy's nondiscriminatory basis for salary determinations. But,

MEMORANDUM OPINION AND ORDER – PAGE 9

she does not dispute the fact she never worked as an HRBP or HR Director or Manager prior to her promotion. Furthermore, an unsupported assertion that a plaintiff's own "experience was more valuable is not — without more — 'substantial evidence' of pretext." *Id.* Stafford failed to provide evidence that would create a genuine issue of material fact to show New Dairy considered race, sex, or age in its decision on how to compensate her. Accordingly, even if Stafford had properly named her claim as a pay disparity claim under Title VII or the ADEA, the Court would still dismiss Stafford's pay disparity discrimination claims.

### VI. STAFFORD FAILS TO ESTABLISH A *PRIMA FACIE* CASE FOR HOSTILE WORK ENVIRONMENT

Stafford argues that she "was subjected to a hostile work environment because her supervisor undermined her during her employment with New Dairy based on her race, gender, and age." Pl.'s Resp 10. To establish a *prima facie* case of a hostile work environment under Title VII,[2] Stafford must prove that she:

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her protected status]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

---

[2] Though the standards for Title VII and ADEA hostile work environment claims are very similar, they do have differences. *See Dediol v. Best Chevrolet*, Inc., 655 F.3d 435, 441 (5th Cir. 2011). Stafford only addresses the Title VII standard in her response. *See generally* Pl.'s Resp. 10–12. Thus, the Court considers Stafford's hostile work environment based on age to be abandoned and will only consider the standard for a Title VII hostile work environment claim.

MEMORANDUM OPINION AND ORDER – PAGE 10

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

New Dairy argues that Stafford cannot show she suffered harassment based on her protected status. In response, Stafford argues she was subject to Gibson's "abrasive" personality and that "[h]e cusses and shouts and belittles," which made their regular mandatory meetings "feel like a hostile environment." Pl.'s Resp. 11. However, Stafford cites no evidence to support these allegations regarding Gibson's behavior. Similarly, Stafford offers no argument that any of Gibson's alleged harassment was based on a protected status.

The only fact clearly established is that Gibson requested regular meetings with Stafford, which Stafford felt were excessive. Stafford argues that:

> There is no evidence that any male was required to leave their office to sit in [Gibson's] office daily. There is no evidence that any non-black person was required to leave their office on a daily basis to sit in Ray Gibsons' office daily. No younger woman and no younger man were singled out for this treatment. Plaintiff alone was singled out for this treatment. Plaintiff felt undermined and isolated.

Pl.'s Resp. 12.

But New Dairy provides adequate evidence to support Gibson's nondiscriminatory purpose behind these daily meetings. Gibson testified that he held daily meetings with Stafford "to better understand the various human resources issues facing the team at the Dallas Plant," he reduced the daily meetings to twice a week upon request, he "did not schedule meeting with his other direct reports as they actively sought time to speak with him on a regular basis," and that he "never considered Stafford's, race, gender, or age" in

his management of Stafford or used derogatory terms regarding Stafford's race, gender or age.  Def.'s App. Gibson Dec. Ex. E 72.  Stafford fails to provide any evidence to rebut New Dairy nondiscriminatory explanation for Gibson's meetings.  Even more, Stafford expressly testified that Gibson never used any racial slurs against her.  Def.'s App., Ex. A, Stafford Depo. 46–47.  Stafford also provides no argument that New Dairy's nondiscriminatory explanations for Gibson's regular meetings are pretext.  Therefore, Stafford fails to show that the alleged harassment she complains of was based on her race or sex.  Accordingly, the Court dismisses Stafford's hostile work environment claim.

Because Stafford's hostile work environment claim fails, Stafford's constructive discharge claim also fails.  *See Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. Appx. 104 (5th Cir. 2009) (unpub.) (holding a "plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment" to show constructive discharge (citing *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992))).  Accordingly, the Court dismisses Stafford's constructive discharge claim.

## CONCLUSION

For the foregoing reasons, the Court grants New Dairy's motion for summary judgment.  Accordingly, the Court dismisses all claims with prejudice.

```
```
Signed July 12, 2024.

_____
David C. Godbey
Chief United States District Judge